L. E. Allen v. Commissioner. Charles Kauderer v. Commissioner.
Allen v. Commissioner
Docket Nos. 6049, 6094.
United States Tax Court
1946 Tax Ct. Memo LEXIS 164; 5 T.C.M. (CCH) 486; T.C.M. (RIA) 46137; June 13, 1946
*164 John W. Piester, Esq., for petitioner, L. E. Allen. J. Lee Boothe, C.P.A., 1053 Book Bldg., Detroit 26, Mich., for petitioner, Charles Kauderer. Cecil H. Haas, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: These proceedings involve income tax deficiencies for the calendar year 1941 in the following amounts: Docket No. 6049
$6,405.32
Docket No. 6094
2,566.59
Since the proceedings present common issues of fact and law, it was agreed by counsel that they would be determined on one record and for the same reason they have been consolidated for consideration and opinion. The controversies hinge upon a determination of the portion of partnership income which is taxable to each of the petitioners herein. A stipulation of facts with exhibits attached was filed in each case and oral and documentary evidence was submitted at the hearing. Findings of Fact L. E. Allen is an individual residing in Crosse Pointe Park, Michigan, and Charles Kauderer is an individual residing in Detroit, Michigan. The income tax return of each of these individuals for the calendar year 1941 was filed with the collector of internal *165 revenue for the district of Michigan at Detroit. Allen's return was prepared on the accrual basis and Kauderer's return was prepared on the cash basis. On June 3, 1941, Allen and Kauderer executed articles of co-partnership of Allen-Kauderer Engineering Company. The partnership thus formed was established to carry on engineering services and production and it was specified, inter alia, that each of the parties would advance one-half of the capital needed to carry on the business, would receive one-half of the net profits after payment of expenses and would share one-half of the business losses. The partnership agreement further provided that books of account should be kept at the place of business and that each partner should have free access to same at all times. On the 31st day of June and the 31st day of December in each year following the formation of the partnership, a general account was to be taken and the respective shares of profits were to be credited to the accounts of the partners. It was provided that upon 60-days notice in writing either partner might withdraw from the business, at which time the partnership should be terminated and an accounting rendered. The partnership *166 employed one Warren as accountant. He kept the books of the partnership and prepared the partnership return of income for 1941 and each partner's individual income tax return for that year. It was mutually decided in August 1941 that the partnership would be terminated about September 1, 1941, and that the partner making the highest bid for the other's interest was to become sole owner of the business. Kauderer was not interested in continuing the business and it was therefore concluded that Allen would purchase his interest. A profit and loss statement for the period of the partnership operation was prepared as of August 31, 1941, and showed a profit attributable to the interest of each partner in the amount of $6,105.49. At this date the capital investment of each of the partners was $13,000. Allen did not have the money available, however, to effect dissolution and payment as of September 1 but it was understood that the deal would be closed as soon as he could acquire sufficient capital. Subsequently, capital contributions were made by each partner to enable the partnership to continue operations and as of September 19, 1941, Allen's capital investment in the business was *167 $24,500 and that of Kauderer was $15,500. A memorandum signed by each partner showed the respective investments in the business as of October 16, 1941, as $43,000 for Allen and $15,500 for Kauderer. A postscript to this memorandum likewise signed by each partner was as follows: The above unballanced [sic] cash investment is due to a settlement agreed on by both parties as to a proposed disolving [sic] of partnership which has not been carried out to date. On November 3, 1941, Allen and Kauderer executed a typed agreement of dissolution of the company. This agreement referred to the agreement of co-partnership dated June 3, 1941, recited that the parties had mutually agreed to dissolve the co-partnership and waived the 60-day notice required by the partnership agreement, and stated that Allen was to be the sole owner of the company's assets thereafter and was to assume its liabilities. Other pertinent portions of the dissolution agreement are as follows: 4. The party of the first part agrees on the date hereof to pay to the party of the second part the sum of Fifteen Thousand Five Hundred Dollars representing the investment of the party of the second part in and to said business *168 and the additional sum of Eight Thousand Nine Hundred ($8,900.00) Dollars in cash representing the estimated profits of the partnership. 5. The party of the second part agrees to execute any Bills of Sale or other instruments that may be necessary to transfer to the party of the first part all his right, title and interest in and to said co-partnership. 6. It is further agreed that on and after the date hereof each of the parties hereto are freed from any obligation to the other created by the original Agreement of Co-Partnership dated June 3rd, 1941. This document had been typed for execution in September 1941 and "November" was substituted in ink for "September" wherever the date of dissolution appeared. In paragraph 4 the typewritten words and figures "Six Thousand ($6,000.00)" were marked out and "Eight Thousand Nine Hundred ($8,900.00)" written in in substitution therefor. In accordance with the dissolution agreement Allen made payments to Kauderer as follows: November 3, 1941, $15,500; January 30, 1942, $5,000; February 28, 1942, $3,900. On the partnership return of income of Allen-Kauderer Engineering Company for the period beginning June 1, 1941 and ending October 31, 1941, ordinary *169 net income was reported in the amount of $26,911.14. Under Schedule J of that return, one-half of that income, or $13,455.57, was attributed to the interest of each partner. Respondent has adjusted the partnership ordinary net income to $30,212.29, which adjustment has been agreed to by each of the petitioners. On his individual income tax return for the calendar year 1941 Allen reported $13,455.57 as income from the partnership. In addition to other adjustments to Allen's net income, his income from the partnership was increased by $7,856.72. As thus adjusted Allen's taxable income from the partnership is $21,312.29, or the total adjusted net income of the partnership less $8,900. On his individual income tax return for the calendar year 1941 Kauderer reported as income from the partnership $13,455.57. Under item 16, "Other deductions authorized by law", $4,555.57 was entered. This deduction was explained on the return as follows: Computation of Loss on Sale of Partnership Investment in Allen-Kauderer Engineering Company. Cash Investment June 1, to October 31,
1941
$15,500.00
50% of Partnership Profits
13,455.57
$28,955.57
Less - Sale Price to L. E. Allen
24,400.00
$ 4,555.57
*170 In addition to another uncontested adjustment respondent increased Kauderer's partnership income to $15,106.14, or one-half of the adjusted partnership ordinary net income, and disallowed the loss deduction. Allen's distributive share of the partnership ordinary net income was $21,312.29 and Kauderer's distributive share was $8,900. Opinion The ordinary net income of the Allen-Kauderer partnership from its formation on June 3, 1941, to its dissolution on November 3, 1941, was $30,212.29. In each of these proceedings we are first called upon to determine the petitioner's distributive share of such income. Petitioner Allen contends that the June 3 agreement is determinative in its provision that each partner is to receive 50 per cent of the partnership net profits, or $15,106.14. The dissolution agreement is regarded by Allen as effecting a purchase by him of Kauderer's interest which, it is argued, is nevertheless a purchase because a later determination of partnership profits revealed that he had bought for $8,900 an interest worth over $15,000. Allen also contends that he realized no taxable gain on the purchase. At the hearing Allen offered no oral evidence in his own behalf *171 and since it was agreed that both cases would be considered on one record he objects to the inclusion in the record of the testimony offered by Kauderer and the respondent on the ground that the terms of the dissolution agreement have been integrated in the formal writing signed by both parties and as thus set out may not be varied by oral evidence. Respondent contends in the Allen case that the petitioners entered into a new partnership agreement on or about September 1, 1941, which changed the proft sharing ratios and that under this new agreement Allen's distributive share of the partnership profits is $21,312.29, or the total ordinary net income less $8,900. Petitioner Kauderer's position apparently is that the partnership was terminated as of approximately September 1, 1941, and that the $8,900 received by him represented his one-half of the profits as of that date plus "the difference paid by Allen as part of the plan to retire petitioner." Kauderer regards September and October as a settlement period during which the business was treated as belonging to Allen. In this case, respondent contends that the only partnership agreement was that of June 3, that the partnership was *172 not dissolved until November 3, and that Kauderer's distributive share of the partnership income was $15,106.14, or 50 per cent, even though he received only $8,900. Kauderer testified in his own behalf and Allen testified on behalf of respondent. We do not doubt that Allen purchased the interest of Kauderer but we think it is clear that the purchase price agreed upon was the amount of the latter's investment plus his distributive share of the profits. As his share of the profits Kauderer actually received $8,900, but it is the distributive rather than the distributed share of profits which is taxable to a partner. See . A taxpayer may not escape taxation upon profits which he has earned by turning his back upon them or by assigning them to another. Cf. ; . However, partners may alter their existing agreement as to distributive shares of future profits and such a new agreement is determinative for tax purposes. . The controlling inquiry here, therefore, is whether the $8,900 was actually *173 Kauderer's distributive share. The instrument embodying the dissolution agreement was composed and typed to take effect about September 1, 1941. If it had been executed as of that date the amounts inserted in paragraph 4 thereof would have been computed in accordance with the June 3 agreement and Kauderer's share of the profits would have been determined as of the execution date in the amount shown by the profit and loss statement prepared as of August 31, 1941, or $6,105.49. The amount "$6,000" was actually typed into the dissolution agreement and later stricken out. Kauderer shared in the profits earned after that time, however, for the amount due him was increased to $8,900. He also contributed an additional $2,500 in capital. We think, therefore, that Kauderer's right to partnership profits was not terminated as of September 1. While the evidence is conflicting as to the method by which the additional $2,794.51 in profit was computed, it is all to the effect that the figure was an estimate. The difficulty lies in determining from this unsatisfactory record whether it was an estimate of 50 per cent of the profits as of November 3, 1941, or as of some earlier date, or whether *174 it was intended to represent a different precentage of the profits. When questioned with respect to the October 16 memorandum, petitioner Allen testified: A. Well, I believe the purpose of this was the fact that the decision that I would purchase Mr. Kauderer's share of the business had been agreed mutually between us. That had all been agreed upon. In order to further the interests of the company and let us go ahead and proceed and take care of the necessary capital, I put in additional capital. Otherwise, we would have been… could not have operated. Q. Had the final dissolution agreement - the terms of the final dissolution agreement - been agreed upon? A. It had been agreed we would dissolve, and the amount and everything. But, as Mr. Kauderer brought out in his testimony, it wasn't until later that the actual deal was closed although it was previously all agreed upon. The only reasonable interpretation of these statements seems to be that the $8,900 figure had been agreed upon prior to October 16, 1941, even though it was not known as of what date the partnership would formally cease to exist. The postscript to the October 16 memorandum makes this increasingly clear. *175 We are also irresistibly persuaded by the record that shortly after September 1 the petitioners came to regard the business as belonging solely to Allen with the formal dissolution of the partnership being delayed only by his inability to settle. In view of this and since it would have been contrary to normal business sense for Kauderer to sell for $8,900 a 50 per cent interest in future profits of the concern for an indefinite period in addition to 50 per cent of the accumulated profits, we conclude that it was understood by him and Allen that he was not entitled to future profits and that the $8,900 was based on an estimate of profits earned by the partnership as of a date prior to October 16. When we also note that after September 19 Kauderer contributed no more capital to the enterprise although Allen invested an additional $18,500, it seems apparent that by agreement between the partners prior to October 16 Allen was to bear 100 per cent of the contribution burden and was to receive 100 per cent of the profits. We conclude, therefore, that Kauderer had no right to partnership profits accruing subsequent to the date of that agreement and is not taxable on any portion thereof. *176 The record contains no statement, however, as to the amount of such profits and we have yet to determine each partner's distributive share of profits earned prior to the date of the new agreement. Allen testified as follows with respect to his offer to Kauderer: A. We mutually figured and estimated what we thought the profits were, and I arrived at the eighty-nine hundred figure, and that was my offer to him for his share of the business. When asked whether the $8,900 amount was computed according to the partnership agreement, Kauderer testified: A. No, because there was no real proportion there. Mr. Allen had a little more capital investment at that time; in fact, quite a bit more. Q. Was there any discussion concerning the capital? A. Oh, yes, he was entitled to a little more profit. Q. Well, just what was said? A. Well, just about along that line, that on account of the unbalanced capital investment he was entitled to so much more profits than I was, which I agreed to. Kauderer was then unable to state the proportion of partnership profits which his additional $2,794.51 of profits were to represent but we note the record contains no evidence in contradiction of *177 his statement that the equal sharing of profits was abandoned in favor of a new proportion based upon the capital contribution of each partner. It appears, however, that this new proportion was agreed to with respect to profits which had been earned from September 1 to the date of the new agreement. We are, therefore, brought to this point. (1) Until September 1, 1941, Kauderer and Allen each had a 50 per cent distributive share which at that date was $6,105.49 in amount. (2) Settlement was delayed and no new agreement was made until some unknown date prior to October 16, at which time earned profits were estimated and $2,794.51 was added to Kauderer's $6,105.49 share as an unknown but less than 50 per cent proportion of profits accrued from September 1 to that date. (3) From that date Kauderer had no distributive share of future partnership profits. If it were established in the record that the new proportions had been agreed to at September 1 then we clearly should hold that Kauderer's distributive share was $8,900 and that Allen's share was the remainder of the partnership ordinary net income. The only apparent objection here to such a holding is that the new agreement was an *178 attempt by Kauderer to assign to Allen a portion of profits which he had earned. We do not regard the objection as insurmountable under the peculiar facts here. After the partners had departed from their original agreement by unbalancing their respective capital contributions, they drifted along without any clear understanding as to the effect of that departure upon the profit sharing ratios. Where the later distribution agreement made under such circumstances is based upon capital contribution the objection has no standing for in such a case the taxpayer's effort is not to assign to another income which he has earned but it is to determine what income he has earned. We have considered the oral evidence offered at the hearing because we think its effect is merely to explain how certain terms of the written dissolution agreement were arrived at and because we see no variance between our conclusions and the provisions of the written instrument. The oral evidence does show an alteration of the original partnership agreement but the parol evidence rule does not prohibit a showing that an oral agreement different from the written original was subsequently entered into by the parties. *179 9 Wigmore on Evidence, § 2441. We hold that petitioner Allen's distributive share of the partnership ordinary net income was $21,312.29 and that petitioner Kauderer's distributive share was $8,900. These conclusions render it unnecessary to consider the remaining contentions of the parties. As to Docket No. 6049, decision will be entered for respondent. As to Docket No. 6094, decision will be entered under Rule 50.